UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LETICIA CORONA, et. al., | |
| Plaintiffs, | |
| v. | No. 24 CV 2306 |
| NORTH CENTRAL NARCOTICS TASK FORCE, et. al., | Judge April M. Perry |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

    Before this Court is Defendant North Central Narcotics Task Force's motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 63. For the reasons stated herein, Defendant's motion is granted.

    Plaintiffs Leticia Corona and Angel Rivera, individually and on behalf of their five minor children ("Plaintiffs"), brought this cause of action against the North Central Narcotics Task Force ("NCNTF"), Illinois State Police ("ISP") Director Brendan F. Kelly, the Village of Streamwood, the Village of Bartlett, the City of Elgin, and numerous individual NCNTF, ISP, Streamwood, Bartlett, and Elgin law enforcement officers. Doc. 1. The case arises from the execution of a search warrant at Plaintiffs' home in the early morning hours of March 22, 2023. Doc. 1 ¶¶ 33, 35. Based upon what Plaintiffs believe to be the unlawful conduct of law enforcement during the execution of that search warrant, Plaintiffs brought the following claims against the NCNTF: (1) a *Monell* claim under 42 U.S.C. § 1983, Doc. 1 ¶¶ 19, 107; (2) a state law claim for willful and wanton failure to properly hire, supervise, and train, Doc. 1 ¶¶ 19, 109; and (3) a state law *respondeat superior* claim based on the actions of NCNTF's agents, Doc. 1 ¶¶ 19, 110. *See also* Doc. 64 at 7.

    NCNTF now moves to dismiss the complaint on the bases of Eleventh Amendment immunity and the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1. Doc. 63. The Eleventh Amendment divests federal courts of subject matter jurisdiction over suits by private parties against the state, and therefore the Court analyzes the motion under Federal Rule of Civil

Procedure 12(b)(1). *See Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997).[1] The parties agree that the outcome of the case turns on whether the Court finds the NCNTF to be an arm of the state. *See DuPage Reg'l Office of Educ. v. United States Dep't of Educ.*, 58 F.4th 326, 337 (7th Cir. 2023) ("Under the Eleventh Amendment, the states, including those entities that can be considered 'arms of the state,' are generally immune from suit in federal court. This immunity does not extend, however, to other political or municipal entities created by states"). If NCNTF is effectively an arm of the state, both the federal and state charges must be dismissed. *See* Doc. 64 at 8 ("Plaintiffs agree that if the Task Force is considered a state agency, then the Task Force would be entitled to sovereign immunity").

The Court begins with the preliminary question of what documents may be considered along with the motion to dismiss. Defendant attached to its motion the NCNTF "Multi-Jurisdictional Task Force Interagency Agreement" (the "Agreement"), Doc. 63-1, and the Agreement is vital to the success of Defendant's claim that it is an arm of the state. In response, Plaintiffs assert that no extrinsic evidence should be considered when evaluating a motion to dismiss and that Defendant's arguments are better saved for summary judgment. Doc. 64 at 2.

The Court finds that it can consider the Agreement as part of this motion to dismiss. The Seventh Circuit repeatedly has held that courts can take judicial notice of public records which are undisputed, even for motions brought under Federal Rule of Civil Procedure 12. *See, e.g., Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."); *Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (finding that courts can "take judicial notice of the contents of certain matters in the public record," when ruling on a motion for judgment on the pleadings under Rule 12(c)); *Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint. Rather, the plaintiff has the obligation to establish jurisdiction by competent proof, and the court may properly look to evidence beyond the pleadings in this inquiry."). The Agreement is a public record and its authenticity is unchallenged; therefore, the Court will refer to the Agreement in resolving this motion to dismiss.

Turning to the Agreement, the Agreement memorializes the foundation of the NCNTF and outlines the NCNTF's purpose and scope. Doc. 63-1. The Agreement is signed by "Member Agencies," which include ISP and twelve police departments northwest of Chicago. *Id.* at 1. The purpose of the Agreement "is to create and operate a multi-jurisdictional authority" for various law enforcement efforts. *Id.* at 3. Officers appointed to the NCNTF remain on their local police department payroll and their departments supply necessary equipment and assume workers' compensation liability for their officers. *Id.* at 3-4. However, "ISP shall appoint Task Force officers as 'Inspectors' pursuant to the authority given to it in the Illinois Compiled Statutes,"

---

[1] The Court acknowledges that the Seventh Circuit has sometimes referred to the Eleventh Amendment as jurisdictional, and sometimes as non-jurisdictional, *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533-34 (7th Cir. 2022) (collecting cases), and for that reason many defendants bring motions to dismiss under both 12(b)(1) and 12(b)(6). While the Court believes that 12(b)(1) is the proper rule for analyzing an Eleventh Amendment motion to dismiss, in this case the result would be the same under either rule.

and further provide "representation and indemnification" to the NCNTF officers who are appointed "pursuant to 5 ILCS 350/1." *Id*. at 4-5. ISP houses and trains the NCNTF officers, provides specialized equipment and communication devices, and stores evidence seized as part of the NCNTF's work. *Id*. at 4. As for leadership structure, the Director, Deputy Director, and Group Supervisor of the NCNTF all must be from ISP; Member Agencies contribute the non-supervisory task force officers. *Id.* at 6-7. Moreover, ISP policies must be followed for report writing, confidential sources, official advance funds, and evidence handling. *Id*. at 8.

Based upon the Agreement, the Court concludes that the NCNTF is quite similar to the West Illinois Task Force ("WITF"), an entity which the Seventh Circuit has held is entitled to Eleventh Amendment immunity as an arm of the State of Illinois. *Tucker v. Williams*, 682 F.3d 654 (7th Cir. 2012). Like the NCNTF, the WITF was created by an interagency agreement between ISP and local law enforcement agencies. *Id*. at 657. In concluding that the WITF was an arm of the state, the Seventh Circuit highlighted four characteristics of the WITF in its analysis: (1) ISP approved the use of all official funds for the WITF; (2) ISP supervised all task force operations; (3) the ISP Director appointed personnel to the task force who were "considered employees of the state and are indemnified and represented by the State as state employees"; and (4) ISP supplied all facilities, training, and specialized equipment for the WITF's operations. *Id*. at 659. After listing these four characteristics, the Seventh Circuit held that the WITF "is an extension of the Illinois State Police and, as such, is entitled to the same immunity protections afforded to the State Police." *Id*.

The Court notes that, as is detailed above, the NCNTF shares the same four characteristics that the Seventh Circuit found conclusive with respect to the WITF. However, Plaintiffs claim there are two significant differences between the WITF and NCNTF. First, Plaintiffs argue that this case is distinguishable from *Tucker* because the Agreement does not include a "specific and explicit clause" making NCNTF officers employees of the State of Illinois. Doc. 64 at 5. The Court disagrees. The Agreement states that "ISP shall appoint Task Force officers as 'Inspectors' pursuant to the authority given to it in the Illinois Compiled Statues (20 ILCS 2620 et. seq.)." Doc. 63-1 at 5. The statutory reference is to the portion of the Illinois code that grants the Director of ISP the ability to employ inspectors, generally, and which grants ISP inspectors police powers over the entire state. 20 ILCS 2620/3-4. Thus, while Plaintiffs are correct that the words "NCNTF officers are state employees" do not appear in the Agreement, the Agreement's reference to the statute that gives the ISP Director the power to appoint inspectors as employees has the same legal effect as the language that was present in *Tucker*.

Nor does the Court agree with Plaintiffs' second attempt to distinguish the NCNTF from the WITF, namely, Plaintiffs' claim that the Agreement "is vague and ambiguous on the issue of indemnification." Doc. 64 at 6. The Agreement's indemnification clause states as follows:

> Illinois State Police and/or the State of Illinois shall provide, to the extent permitted by law, representation and indemnification to a Task Force officer appointed as an Inspector by the Director of the Illinois State Police, pursuant to 5 ILCS 350/1, in the event that any civil proceeding is commenced against the Task Force officer alleging the deprivation of a civil or constitutional right arising out

> of any act or omission occurring within the scope of Task Force activities provided that such actions were not the result of the Task Force officer's intentional, willful, or wanton misconduct.

Doc. 63-1 at 4. The statutory citation within the indemnification clause is a reference to the State Employee Indemnification Act, which specifically defines "employee" to include "an individual appointed as an inspector by the Director of the Illinois State Police." *See* 5 ILCS 350/1(b). This reference is neither vague, nor ambiguous. Although Plaintiffs claim that the state could choose not to indemnify NCNTF officers who are accused of intentional, willful, or wanton behavior (as is alleged in this case), the same is true for every state employee. *See* ILCS 350/2(b) (allowing the Attorney General to refuse to defend employees if the Attorney General determines that the act "was intentional, wilful [sic], or wanton misconduct" and providing that they should be indemnified if the jury finds that the act was both within the scope of employment and was not intentional, willful or wanton misconduct). Thus, the NCNTF officers receive the same representation and indemnification not only as was present in *Tucker*, but as would any other ISP officer and indeed any other Illinois employee.

      This case is analogous to *Tucker*, and as *Tucker* is binding precedent the outcome is the same. The Court holds that the NCNTF is an arm of the state and therefore is immune from federal suit under the Eleventh Amendment. The state law claims are barred by the Illinois State Lawsuit Immunity Act, which similarly provides immunity from suit to state agencies. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (noting that state rules of immunity govern actions in federal court alleging violations of state law). NCNTF's motion to dismiss the complaint against it is granted.

Dated: 2/10/2025

*April M Perry*

United States District Judge